## JOHNSON *v.* MARTIN.

PATENTS; INTERFERENCE; "MEANS;" CONSTRUCTION OF ISSUES.

1. The word "means," in counts in interference relating to a machine for closing and sealing cartons, which provide for feeding the cartons to the machines in a plurality of streams, and recite in combination therewith, "means" for alternately conveying the cartons one at a time from said streams to the conveyor of the folding and sealing machine, is used in its generic sense, thus being capable of including several elements; and therefore the counts are readable upon a device relied upon for reduction to practice, which shows the cartons fed forward in a plurality of streams until a reciprocating member forms them into a single stream on a belt which carries them to another conveyor, from which they are delivered by a swinging arm to a conveyor which carries them into engagement with the folding and sealing device. (Citing *Lecroix* v. *Tyberg,* 33 App. D. C. 586.)

2. An issue in interference which involves the question of priority only, will not be strictly construed as against one of the parties because his machine upon which he relies to show reduction to practice was in public use for more than two years before his application was filed. (Citing *Lecroix* v. *Tyberg, supra,* and *Burson* v. *Vogel,* 29 App. D. C. 388.)

No. 879. Patent Appeal. Submitted January 14, 1914. Decided February 2, 1914.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decision of the Commissioner of Patents awarding priority of invention to Frank B. Martin, appellee. Originally, the issue embodied three counts, but the first having been awarded to Harry L. Johnson, appellant, and no appeal having been taken by appellee from this decision, only the 2d and 3d counts are before us for consideration. They read as follows:

"2. In a machine of the character described, the combination of the following instrumentalities, a series of top flap securing devices, a conveyor for feeding the cartons to such top flap securing devices, means whereby the cartons are fed to the machine in a plurality of streams, and means for alternately conveying the cartons one at a time from said streams to the conveyor.

"3. In a machine of the character described, a series of top flap folding devices, means whereby glue is applied to the flaps, a carton carrying conveyor provided with a plurality of followers secured at intervals to said conveyor and adapted to convey and carry the cartons forward into engagement with said folding and glue applying devices, means whereby the cartons are fed to the machine in a plurality of streams, and means for alternately conveying the cartons one at a time from said streams to the conveyor."

The nature of the invention is clearly set forth in the decision of the Examiner of Interferences as follows: "The machines disclosed in the applications involved in this controversy are designed for closing and sealing the top flaps of cartons after they have been filled. To accomplish this, a conveyor is provided which carries the cartons through the machine, bringing them in their travel in contact with the folding, gluing, and sealing mechanisms. The cartons are received from the filling machines in two rows or streams, and as the conveyor of

the folding and sealing machine is adapted to handle the cartons only in a single row or stream, a shifting mechanism is provided which automatically transfers the cartons, one at a time and in alternate order, from each of the two streams to the conveyor of the folding and sealing machine."

Appellant filed his application August 4, 1908. He took no testimony, relying upon his filing date for a date of conception and of constructive reduction to practice. Appellee's application was filed on July 22, 1909.

Messrs. *Chappell & Earl* for the appellant.

Messrs. *Mauro, Cameron, Lewis, & Massie* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

All of the tribunals below found that appellee in 1905 constructed and successfully operated a machine illustrated in "Martin's Exhibit Drawing of First Martin Machine," and that finding is not contested here. It is contended, however, that this machine does not disclose "means whereby the cartons are fed to the machine in a plurality of streams, and means for alternately conveying the cartons one at a time from said streams to the conveyor of the folding and sealing machine," as required by the issue. The tribunals below were unanimous in finding against this contention, and with them we agree. Appellee's first machine, on which he relies for a reduction to practice, shows the cartons fed forward in a plurality of streams until a reciprocating member forms them into a single stream on a belt, which carries them to another conveyor, from which they are delivered by a swinging arm to a conveyor, which carries them into engagement with the folding and sealing devices. It will thus be seen that appellee's first machine shows "means for alternately conveying the cartons one at a time from said streams to the conveyor of the folding and sealing machine," if the word "means" is to be given a construction broad enough to include the several elements there required to ·convey· the

cartons from the several streams to the folding and sealing machine.

There is no limitation in the claims that the means convey the cartons directly from the several streams to the folding and sealing machine. The word "means" is used in its generic sense. When thus used, its definition has been settled by this court in the case of *Lecroix* v. *Tyberg,* 33 App. D. C. 586, where the construction of the words "means for transferring the bunches from the mold to the wrapping mechanism" was in issue. It appeared in that case that Tyberg's "means" consisted of three elements,—"a rocking needle for transferring bunches from the mold, a traveling chain support to receive the bunches from the needle bar and transport them to a point adjacent the cigar-wrapping machine, and a horizontal swinging arm provided with grippers to lift the bunches from the chain support and transfer them to the wrapper-applying machine." The "means" described by Lecroix consisted of swinging arms which lifted the bunches from the mold and transferred them directly to the wrapping mechanism. It was there contended that the machines of the contesting parties were substantially different, but the court said: "We agree with the Commissioner that the words 'means for transferring the bunches from the mold to the wrapping mechanism,' as used in counts 1, 2, and 3, are applicable alike to the transferring device of each party. The term 'means,' as used in this connection, must be held to be a generic term, and hence applicable to each species of transferring device. It follows that these counts are readable on Tyberg's structure."

It is also contended by appellant that the issue should be given a strict construction because appellee's first machine had been in public use for more than two years prior to his application for patent. The question of priority is the only one with which we are concerned in this proceeding, and the question of a statutory bar to appellee's right to a patent on these claims is not in issue here. *Lecroix* v. *Tyberg, supra; Burson* v. *Vogel,* 29 App. D. C. 388.

The decision of the Commissioner of Patents is affirmed, and

the clerk is directed to certify these proceedings as by law required.                                                *Affirmed.*

A petition by the appellant for a rehearing was overruled March 3, 1914.